[L. A. No. 1306.    Department Two.—February 2, 1905.]

# D. F. GARRETSON, Appellant, *v.* PACIFIC CRUDE OIL COMPANY et al., Respondents.

CORPORATIONS—ACTION BY STOCKHOLDER FOR BENEFIT OF CORPORATION—CANCELLATION OF FRAUDULENT STOCK—FAILURE OF PROOF—SUPPORT OF FINDINGS.—In an action by a stockholder for the benefit of the corporation and all other stockholders to cancel stock alleged to have been fraudulently issued by the corporation to two of its officers and certain stockholders defendants upon a corrupt concealment of official acts and the fraudulent combination of defendants to cheat and defraud the other stockholders and the corporation, proof of these averments was essential to plaintiff's case; and where there was a failure of such proof, and the evidence justified the court in finding that there was neither actual nor constructive fraud in the transactions alleged, the findings for the defendants are supported, and the court properly passed judgment dismissing the action with costs to the defendants.

ID.—ORGANIZATION OF CORPORATION—PROPERTY IN EXCHANGE FOR STOCK.—Acting in good faith, it was competent for all the stockholders organizing the corporation to agree that shares of the corporation should be issued to themselves in exchange for property conveyed by them to the corporation, and to acquire which in part the organization was formed.

ID.—SUBSEQUENT ISSUANCE OF SHARES—PASSING OF TITLE.—The fact that the shares of stock for the property transferred to the corporation were not issued until after other shares had been issued is immaterial, the title to the stock having passed upon the completion of the agreement by which the consideration was conveyed to the corporation.

ID.—FALSE REPRESENTATION AS TO PRICE—INJURY TO PLAINTIFF.—If plaintiff was misled to his injury by subsequent false representations of the defendants as to the price paid by them for their stock, that could not affect the corporation and could not be availed of by the plaintiff in an action for its benefit; but his only remedy would be in an action personal to himself.

ID.—SALE OF LEASES FOR SHARES OF STOCK.—One who, while secretary of the corporation, acted personally at his own expense in securing valuable oil leases, which he sold in good faith to the corporation in consideration of stock to be issued to himself, and which were purchased by the directors openly and in good faith, is guilty of no fraud, actual or constructive.

ID.—FAILURE OF PLAINTIFF TO DO EQUITY.—The plaintiff's case in proof could not warrant the court in canceling the shares of stock given in payment for property conveyed to the corporation, and

at the same time allow the corporation to retain the consideration. The plaintiff cannot seek equity for the benefit of the corporation while wholly failing to do equity or requiring the corporation to do equity.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion.

Goodrich & McCutchen, and Oscar A. Trippet, for Appellant.

George P. Adams, J. W. McKinley, and Cochran & Williams, for Respondents.

CHIPMAN, C.—Plaintiff is a stockholder in defendant corporation, and as such sues for its benefit and that of all the stockholders, the corporation having, on plaintiff's demand, refused to bring the action. The complaint sets forth two causes of action: First, to cancel an issue of sixty-eight thousand shares of the capital stock of defendant corporation; second, an issue of two hundred and fifty thousand shares. The first of these issues was made to defendant Corbin for himself and the original corporators who, with the corporation and one Wilbur, constitute the defendants in this action. The stock will be referred to as the Corbin shares. The second issue was made to defendant Wilbur, and will be referred to as the Wilbur shares. The cause was tried by the court and the findings of fact were in favor of defendants. Judgments passed, dismissing the action, with costs to defendant. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

It is not distinctly claimed in plaintiff's brief that the findings do not sustain the judgment, although the argument in effect is, that the court drew wrong conclusions from the facts found, and that in some respects the facts were not just inferences from the evidence. No point is made that the court committed any errors of law in ruling upon the evidence admitted or excluded. Plaintiff's brief is not as helpful as it might otherwise have been, nor is it conformable to the spirit of the rules of the court, for it fails to specify the particulars

wherein the findings are unsupported by the evidence, except in a very general way, and in its statement of facts it fails to cite the folios of the transcript in support thereof. Turning to the specifications in the transcript wherein the findings are claimed to be unsupported, there is almost an entire failure to point out the ground of the insufficiency of the evidence. An examination of the record, however, convinces us that the findings of fact have support in the evidence, and unless the trial court drew wrong conclusions from these findings the judgment and order must be affirmed.

*The sixty-eight thousand Corbin shares.* It appears that defendant Corbin held an option on certain leases of oil-lands. By arrangement among the defendants other than Wilbur, it came about that for a consideration Corbin conveyed to these defendants an interest in the option held by him, and defendant corporation was formed for the purpose of taking over these leases in consideration of which sixty-eight thousand shares of the capital stock of the corporation were to be issued to Corbin, he to be entitled to certain of those shares and the balance to be divided among the other defendants, except the corporation and defendant Wilbur, who at this time knew nothing of the transaction and had no interest in it. The capital stock of the corporation was one million shares, of the par value of one dollar each. It was also agreed by these original corporators that each of them should subscribe for two thousand shares of the corporation at ten cents per share and pay the money into the treasury; which was accordingly done, and the shares were issued to them. The organization of the corporation was effected on April 8, 1900, the defendants other than Wilbur being the only stockholders and directors. The first meeting of the directors and stockholders was held on the day last above named, and, all being present, and agreeing thereto, resolutions were duly passed accepting the Corbin option for leases and authorizing sixty-eight thousand shares of the capital stock of the corporation to be issued to Corbin pursuant to the agreement above referred to, and the leases were executed and delivered to the corporation by the companies which had given the options. The shares issued to Corbin bear date April 25, 1900, and on May 29, 1900, certificates for 6,785 shares were issued to each of defendants, except defendant corporation, which had been

transferred by Corbin pursuant to the agreement already referred to, he retaining the remaining shares. Defendant Wilbur had previous to April 23d come into the company, and had subscribed for two thousand shares of the company's stock on the same terms as the original shareholders and directors, and received 6,785 shares of the Corbin stock in common with them. About twenty-five hundred shares had been sold to other persons whose certificates are dated April 23, 1900, and on May 31, 1900, plaintiff's shares were issued to him.

Plaintiff alleged that the defendant stockholders combined and confederated to cheat and defraud the corporation and the *bona fide* stockholders thereof in the issue of this Corbin stock; that Corbin paid nothing for the leases transferred by him to the corporation; that said leases had no value, all of which the directors knew when they passed the resolutions referred to above; that defendants paid nothing for said Corbin shares issued to them, and the corporation received no consideration, nor was there any property received by said corporation therefor.

The court found otherwise on these issues; that the corporation "did receive a full and valuable consideration for the issuance of said stock to said Corbin and labor was done for and on account thereof, and property actually received by said corporation for the issue of said 68,000 shares of stock," and the same was not fictitious, nor was it issued without consideration, nor is it void. The court also found "that neither the acts of said directors nor of said Wilbur or of any of them in the issuance of said 68,000 shares of stock were done in bad faith or with intent to appropriate to themselves the property or the stock of the corporation without compensation." The court also found that when the sixty-eight thousand shares were issued there were other stockholders (although plaintiff was not then a stockholder), but that "when the resolutions were passed for said issuance of stock to defendant Corbin in consideration of said leases, defendants herein, other than defendant corporation and Wilbur, were the only stockholders in said corporation, and all of said defendants were present at the meeting of the directors at which said resolutions were passed, and were fully familiar with all the facts with reference to the issuance of said stock to said Corbin and the agreements with reference

to the disposition thereof, and consented and agreed to the issuance of said stock and to all the agreements with reference thereto," and said transaction, except as to the formal issue of the certificates for said stock, was fully completed and the agreements performed by the parties thereto before any person other than defendants became a stockholder in said corporation, and no persons other than defendants became stockholders in such corporation prior to April 21, 1900.

It was, also alleged in the complaint that before plaintiff had purchased his said shares the officers and directors of defendant corporation falsely represented that they "have all paid for their stock at the rate of ten cents per share." The court found that this statement was caused to be published by defendant Corbin as secretary of the company, with knowledge of the directors, and that at the time plaintiff purchased his stock he believed it to be true. Acting in good faith, it was competent for all the stockholders to agree by unanimous concurrence that shares of the corporation should be issued to themselves in exchange for property conveyed by them to the corporation and to acquire which in part the corporation was formed. (*Kellerman* v. *Maier,* 116 Cal. 416; *Scadden Flat G. M. Co.* v. *Scadden,* 121 Cal. 33; *Smith* v. *Ferries and C. H. Ry. Co.,* (Cal.) 51 Pac. Rep. 710; Morawetz on Corporations, sec. 267; Cook on Stockholders, sec. 38, notes p. 50.) The fact that the Corbin shares were not issued until after other shares had been issued is immaterial, for the Corbin stock passed upon the completion of the agreement by which the consideration was conveyed to the corporation. Nothing remained to be done but the formal issuance of the certificate upon which the ownership of the stock did not depend. (*California S. Hotel Co.* v. *Callender,* 94 Cal. 120;[1] *San Joaquin L. and W. Co.* v. *Beecher,* 101 Cal. 70; *Pacific Fruit Co.* v. *Coon,* 107 Cal. 447, at p. 452.)

As to the alleged false representations concerning the price paid by defendants for their stock, the statement was true as to their cash purchases, and there was evidence tending to show that the Corbin leases had a value when acquired nearly if not quite equal to ten cents per share of the stock. However this may be, the purchase of the Corbin leases with stock was done in good faith and was a legitimate transaction, and

[1] 28 Am. St. Rep. 99.

no other stockholder could complain, for all of them agreed to the purchase. If plaintiff was misled to his injury by subsequent false representations of defendants, the fact could not affect the corporation. His remedy would be one personal to himself, and not in the name and for the benefit of the corporation whose corporate transaction was valid when made.

*The two hundred and fifty thousand Wilbur shares.* The complaint alleges that defendant Wilbur was appointed secretary and general manager of defendant corporation, and that while acting in these capacities and for the corporation he secured from one Treadwell and others certain leases of oil-lands; that he subsequently assigned these leases to the corporation and was given two hundred and fifty thousand of its shares therefor. The claim is, that he was the agent and trustee of the corporation when he took the Treadwell leases, and in equity the corporation was entitled to the benefits of the transaction.

The court found that Wilbur was not the general manager of the corporation when he acquired these leases or at any other time; that he had been elected as secretary previously thereto, but "it was upon the express agreement that he should devote but little of his time to the duties of such office and should be free to deal in all properties on his own account."

The court found further that in negotiating for and examining these Treadwell leasehold properties Wilbur paid his own expenses and acted wholly in his individual capacity, and "he was not acting for or on behalf of said corporation and did not secure said lease for said corporation"; and "said corporation was not entitled to have said lease made direct to it or to have said assignment made to said corporation by said Wilbur without compensation or consideration"; and that "the assignment of said lease to said corporation" constituted "a full, adequate, and valuable consideration for said stock, and the said issue was not fictitious or without consideration." The court found against plaintiff's claim that these shares were issued to Wilbur through a corrupt combination with the other defendants and for their mutual benefit, and found that they were issued in good faith and for a valuable consideration to Wilbur alone, in which neither the other defendants nor the corporation at the

time had any interest. The evidence is full and explicit as to all the circumstances attending this deal and justified the ultimate facts found by the court. There was evidence, and the court found, that there was no fraud in the dealings complained of and no concealment of the facts, but that the various steps in the transactions set forth in the complaint were duly entered on the books of the corporation, and that there were no secret agreements between the parties in respect of the acts complained of.

It is not necessary to controvert the principles of law stated by plaintiff as governing officers and directors of corporations in their dealings as such. Plaintiff's case is grounded on the alleged fraud of defendants, other than the corporation, and upon the corrupt concealment of their official acts and their fraudulent combination to cheat and defraud the other stockholders and the corporation. Proof of these averments was essential to plaintiff's case and was not forthcoming. On the contrary, the evidence justified the court in finding that there was neither actual nor constructive fraud in respect of the two transactions the subject of plaintiff's complaint. The facts do not bring the case within the rules relied on by plaintiff. The purchase of the Treadwell leases was made by the directors openly and free from any taint of fraud, and the evidence is, that these leases had great value. We do not think the plaintiff has made a case which would warrant the court in canceling the shares given in payment for the leases, and at the same time allow the corporation to retain the consideration, and plaintiff does not offer to restore the leases. Plaintiff is seeking equity for the benefit of the corporation while wholly failing to do equity or requiring the corporation to do equity.

The judgment and order should be affirmed, and it is so advised.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland, J., Lorigan, J., Henshaw, J.