**BOATRIGHT v. STEINITE RADIO CORPO-TION et al.**

No. 266.

Circuit Court of Appeals, Tenth Circuit.

Jan. 12, 1931.

Rehearing Denied Feb. 12, 1931.

W. G. Boatright, of Kansas City, Mo. (A. L. Berger, of Kansas City, Kan., and Ringolsky, Boatright & Jacobs, of Kansas City, Mo., on the brief), for appellant.

James A. Reed, James E. Taylor, and Frank A. Fratcher, all of Kansas City, Mo., and Harry N. Wyatt, of Chicago, Ill., for appellees.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Boatright brought this action against the Steinite Radio Corporation and the Steinite Radio Company, corporations organized under the laws of Kansas (hereinafter called the Kansas Corporation and the Kansas Company, respectively), to recover damages for breaches of an alleged contract of joint adventure.

The amended petition alleged that the defendants were engaged in manufacturing and selling radio receiving sets and equipment for profit; that prior to March, 1926, plaintiff owned a one-third interest in the United States Distributing Company, a co-partnership; that such co-partnership had an established business with dealers in radio receiving sets and equipment, and had a good-will, plant, sales organization and valuable trade lists; that the Kansas Corporation desired to obtain the services of plaintiff to handle its entire line of merchandise and for that purpose entered into a verbal contract of joint adventure with the plaintiff, whereby they agreed: That, as a means and method of doing business and for the convenience of both parties, the Kansas Corporation and plaintiff should organize a corporation under the laws of Kansas with a capital stock of $10,000 (hereinafter referred to as the United Corporation), to be used as an instrumentality and agency through which plaintiff and the Kansas Corporation would carry on the business of such joint adventure; that the Kansas Corporation would advance $2,500 to liquidate such partnership business, purchase the interest of plaintiff's partner and finance the United Corporation; that the United Corporation should be organized for the purpose of selling and dealing in radio receiving sets and equipment; that the Kansas Corporation would own fifty-one shares and plaintiff forty-nine shares of the capital stock of the United Corporation; "that plaintiff would be the president and sales manager of said (United) corporation and have a weekly drawing account of salary of one hundred dollars"; that 25% of the net profits should be set aside for the purpose of repaying the amount to be advanced by the Kansas Corporation; that, through such United Corporation, plaintiff would immediately engage in the business of selling radio receiving sets and equipment; that the Kansas Corporation would manufacture and sell to the United Corporation radio receiving sets and equipment manufactured by the Kansas Corporation, including one set known as the Little Giant at $2.40 per set, one known as the Best Five at $20.50 per set, and one known as the U. R. C. Console at $32.50 per set; that the Kansas Corporation would also furnish the United Corporation all radio receiving sets, equipment and parts thereafter manufactured by the Kansas Corporation at prices to be agreed upon from time to time; that the United Corporation would enter into contracts with radio dealers to supply the latter with radio receiving sets and equipment thereafter manufactured by the Kansas Corporation; "that said joint adventure would continue as long as plaintiff remained a stockholder of said (United) Corporation and desired to engage in such business"; and that, in consideration of the making of such contract, plaintiff would transfer to the United Corporation the assets and good-will of the United Distributing Company.

Such petition further alleged that, after the making of such contract, the Kansas Corporation and the plaintiff incorporated the United Radio Corporation, under the laws of Kansas; that the Kansas Corporation advanced the sum of $1,856.85 to liquidate the business of such partnership, to purchase the share of plaintiff's partner therein and to finance the organization of the United Corporation; that plaintiff transferred to the United Corporation all of such partnership business and assets; that plaintiff became the president and sales manager of the United Corporation and entered upon his duties and commenced the doing of business; that the Kansas Corporation began to manufacture for and supply radio receiving sets and equipment to the United Corporation, and the latter began to enter into contracts for supplying dealers with radio receiving sets and equipment; that as such contracts were signed and orders given by dealers, such orders were sent to the Kansas Corporation at Atchison, Kansas; that the latter shipped the merchandise ordered to the purchaser C. O. D. and charged the United Corporation on

open account for the same; that, as such C. O. D. shipments were paid for, the Kansas Corporation paid itself for the equipment at the prices agreed upon; that the business of such joint adventure grew and prospered, and approximately 300 dealers' contracts were entered into; that such contract provided the United Corporation would supply the complete demands of such dealers for one year from the date thereof; that the United Corporation, up to January 31, 1927, made a gross profit of $15,040.40 and a net profit of $7,995.33; that the plaintiff and the Kansas Corporation treated the United Corporation as "a mere paper organization" and "as an instrumentality or agency through which plaintiff and defendants (the Kansas Corporation and the Kansas Company) carried on and transacted their business."

Such petition further alleged: That in the fall of 1926, the Kansas Corporation perfected and began to manufacture electric radio receiving sets designed to operate directly from an alternating current without the aid of batteries; that the Kansas Corporation wholly failed and refused to manufacture for and furnish to the United Corporation such electric receiving sets; that in March, 1927, the Kansas Corporation transferred all its assets and contracts to the Kansas Company; that from March, 1927, to August, 1927, the Kansas Company held up and delayed the filling of orders for radio receiving sets from customers and dealers of the United Corporation, and failed to furnish such customers and dealers with radio receiving sets within a reasonable time after receiving orders therefor; that about August, 1927, the Kansas Company refused to manufacture for or supply or furnish to the United Corporation any radio receiving sets; that such electric radio receiving sets became very popular and were in great demand by the buying public; that the United Corporation would have sold a great number of electric radio receiving sets had the Kansas Company furnished such sets to it, and would have thereby greatly increased its net profits; that the failure of the Kansas Company to furnish radio receiving sets to the United Corporation and to fill the orders of its customers and dealers within a reasonable time caused such dealers and customers to become dissatisfied and to cancel orders and withhold future orders, and eventually destroyed the business of the United Corporation; that, as a result of the breaches of such contract by the Kansas Corporation and the Kansas Company, plaintiff has lost the salary of $100.00 per week which he would have re-

ceived as president and sales manager of the United Corporation, and the 49% of the net profits which would have been earned by the United Corporation and declared as dividends, amounting in the aggregate to $102,000.

Such petition further alleged that, after the filing of the original petition, the "assets, contracts, obligations and liabilities to" the Kansas Corporation and the Kansas Company were transferred to the defendants, the Steinite Manufacturing Company and the Steinite Radio Company, corporations organized under the laws of Delaware.

The trial court sustained a demurrer to the amended petition on the grounds (1) that the contract was contrary to public policy, illegal and unenforceable, and (2) that the cause of action, if any, was in the United Corporation and not in the plaintiff. From a judgment dismissing the amended petition, plaintiff has appealed.

Counsel for plaintiff contend that, although the breaches of the contract alleged may have resulted in damages to the United Corporation, they also resulted in damages to him, and that he may recover the damages suffered by him, in an action in his own name. They cite in support of their contention Meyerson v. Franklin Knitting Mills, 185 App. Div. 458, 172 N. Y. S. 773; Camp v. Gress (C. C. A. 4) 244 F. 121; Id., 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997; Biering v. Ringling, 74 Mont. 176, 240 P. 829; Bank of Commerce v. Bright (C. C. A. 3) 77 F. 949; Eden v. Miller (C. C. A. 2) 37 F. (2d) 8.

Counsel for plaintiff further contend that an agreement to organize a corporation as a mere agency or instrumentality through which the incorporators shall carry on the business of a copartnership or joint adventure is not contrary to public policy. They cite and rely upon Wabash Ry. Co. v. American Ref. Transit Co. (C. C. A.) 7 F.(2d) 335; Chicago, M. & St. P. Ry. Co. v. Minneapolis C. & C. Ass'n, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; La Varre v. Hall (C. C. A. 5) 42 F.(2d) 65.

Counsel for defendants contend that the cause of action, if any, for the alleged breaches of the contract, is vested solely in the United Corporation, and that an action thereon must be maintained in the name of that corporation.

Counsel for defendants further contend that the agreement to treat the United Corporation as a mere agency or instrumentality

of the joint adventure and the owners of the shares in the corporation not as stockholders therein but as members of a joint adventure, is contrary to public policy, and rendered the contract illegal and unenforceable. They cite in support of their contention Jackson v. Hooper, 76 N. J. Eq. 592, 75 A. 568, 27 L. R. A. (N. S.) 658; Boag v. Thompson, 208 App. Div. 132, 203 N. Y. S. 395; Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; Smith v. Parker, 148 Ind. 127, 45 N. E. 770; Sun River Stock & Land Co. v. Montana Trust Co., 81 Mont. 222, 262 P. 1039.

We find it unnecessary to determine whether the alleged contract is contrary to public policy.

■ Corporate entity may be disregarded in cases where not to do so will defeat public convenience, justify wrong, protect fraud or defend crime. Pierce v. National Bank of Commerce (C. C. A. 8) 13 F.(2d) 40, 47; United States v. Milwaukee Ref. Transit Co. (C. C. Wis.) 142 F. 247, 255; McCaskill Co. v. United States, 216 U. S. 504, 515, 30 S. Ct. 386, 54 L. Ed. 590.

But, generally, a corporation will be regarded as a distinct legal entity and corporate entity will be disregarded only when there are controlling reasons therefor. See Majestic Co. v. Orpheum Circuit (C. C. A. 8) 21 F.(2d) 720, 724, 725, where authorities on the subject are collected.

The alleged contract here sued on provided that plaintiff, for his contribution in capital and services to the joint adventure, should receive, not a share in the net profits of the joint adventure, but a salary from the United Corporation and 49% of the net earnings of the United Corporation, as and when declared as dividends. Such contract further provided that the Kansas Corporation should furnish radio receiving sets and equipment, not to the joint adventure but to the United Corporation. True, the contract was made before the United Corporation was created, but it was made for the benefit of the United Corporation, and, after its creation, it ratified such contract.

■ If, after it comes into existence, a corporation expressly or impliedly ratifies a contract made for its benefit by its organizers before it was formed, such contract becomes the contract of the corporation and it is entitled to the benefits thereof and is liable thereon. In re Super Trading Co. (C. C. A. 2) 22 F.(2d) 480; Kentucky Tobacco Products Co. v. Lucas (D. C. Ky.) 5 F.(2d) 723;

Villar & Co. v. Conde (C. C. A. 1) 30 F.(2d) 588; Penn Match Co. v. Hapgood, 141 Mass. 145, 7 N. E. 22; Brautigan v. Dean & Co., 85 N. J. Law, 549, 89 A. 760; Castorland Milk & Cheese Co. v. Shantz (Sup.) 179 N. Y. S. 131, 134; Nannizzi v. Caprile, 43 Cal. App. 498, 185 P. 673; Scadden Flat G.-M. Co. v. Scadden, 121 Cal. 33, 53 P. 440; 14 C. J. p. 257, § 290.

The only breaches alleged were the failures of the Kansas Corporation and the Kansas Company to manufacture for and sell and deliver to the United Corporation radio receiving sets and equipment. Since the joint adventurers were only to share in the net earnings of the United Corporation, the damages to them resulted not directly but indirectly, due to the alleged injury to the United Corporation which made it unable to earn net profits. Therefore, the only damages suffered on account of loss of profits were damages which were due first and primarily to the United Corporation. It follows that plaintiff's contention that he has suffered damages through loss of profits occasioned by the alleged breaches of the contract, in addition to those suffered by the United Corporation, is not sound, and the cases relied upon by counsel for plaintiff are not applicable.

■ It is a general rule that a stockholder cannot sue for and recover damages arising from a breach of contract with a corporation. Cutshaw v. Fargo, 8 Ind. App. 691, 34 N. E. 376, 36 N. E. 650; Belle City Malleable Iron Co. v. Clark, 172 Minn. 508, 215 N. W. 855; 14 C. J. p. 57, § 15.

■■ The rule must be applied in the instant case unless corporate entity is to be disregarded. It is clear that recognition of the corporate entity here will not defeat public convenience, justify wrong, protect fraud or defend crime. If the contract has been breached, as alleged, the United Corporation can maintain an action for and recover damages caused thereby. If it refuses to prosecute an action therefor, plaintiff may then maintain a stockholder's suit in his own name but for the benefit of the United Corporation. Hutchison Box Board & Paper Co. v. Van Horn (C. C. A. 8) 299 F. 424. If such a suit results in recovery, plaintiff will participate ultimately in the net profits, if any, resulting therefrom. There is, therefore, no reason why the corporate entity should be disregarded. On the other hand, there are controlling reasons why the United Corporation should be regarded as an entity. To disregard corporate entity might result in great injustice.

The primary right to sue for and recover damages is in the United Corporation. Under settled principles of corporation law and under the terms of the alleged contract of joint adventure, plaintiff was only entitled to participate in the net earnings of the United Corporation, when declared and paid in dividends. The rights of the creditors and the holders of claims against the United Corporation are, of course, paramount and their claims should be first satisfied. The rights of third persons will not be safeguarded if plaintiff, a stockholder, is permitted to sue for and recover the damages suffered by the United Corporation through the failure of the Kansas Corporation and the Kansas Company to furnish radio receiving sets and equipment to the United Corporation.

As to the major portion of the alleged damages, there is another reason why no recovery could be had.

█ Where an essential element of a contract is reserved for future agreement of the parties, no legal obligation arises until such future agreement is concluded. Weegham v. Killefer (D. C. Mich.) 215 F. 168, 170; Speirs v. Union Drop Forge Co., 180 Mass. 87, 61 N. E. 825; Williston on Contracts, vol. 1, § 45.

█ An executory contract to sell, which provides that the price shall be fixed by future agreement between the parties, is incomplete and nonenforceable until the parties agree on the price. Williston on Sales, vol. 1, § 168; Speirs v. Union Drop Forge Co., supra; Elmore, Quillian & Co. v. Parrish Bros., 170 Ala. 499, 54 So. 203; Bigger & Sons v. Johnson, 106 Ark. 89, 152 S. W. 291.

█ A contract to sell goods to be manufactured is an executory contract to sell and does not pass title, because it is impossible for the seller to pass title to goods of which he has neither ownership nor possession. Williston on Sales, vol. 1, § 130; River Spinning Co. v. Atlantic Mills (C. C. R. I.) 155 F. 466, 471; McKee v. Ward, 289 Pa. 414, 137 A. 599, 600; Herring Motor Co. v. Aetna Trust & Sav. Co., 87 Ind. App. 83, 154 N. E. 29, 32; Sumner K. Prescott Co. v. Franklin Tool Works, 117 Wash. 283, 201 P. 308, 310; Stewart v. Henningsen Produce Co., 88 Kan. 521, 129 P. 181, 183, 50 L. R. A. (N. S.) 111, Ann. Cas. 1914B, 701.

█ Under the contract, the radio receiving sets and other equipment were to be manufactured by the Kansas Corporation. The contract was therefore an executory contract to sell and title to the goods did not pass thereunder.

It follows that, as to the electric radio receiving sets and other equipment, the prices of which were not fixed by the contract but left to be determined by the future agreement of the parties, the contract was incomplete and unenforceable; and neither the plaintiff nor the United Corporation can recover damages for the failure of the Kansas Corporation or the Kansas Company to manufacture, sell and deliver such radio receiving sets and equipment.

█ The contract made no provision for the payment of a salary to the plaintiff by the joint adventure. Therefore, the Kansas Corporation and the Kansas Company have breached no contract to pay him a salary, and plaintiff does not so contend. Instead, he predicates his damages for loss of salary upon the alleged breaches of contract by the Kansas Corporation and the Kansas Company in failing to sell and deliver radio receiving sets and equipment to the United Corporation. The amended petition alleged that such breaches destroyed the business of the United Corporation and made it unable to continue to employ plaintiff as sales manager.

The contract of joint adventure provided that plaintiff should be president and sales manager of the United Corporation when organized, and should receive a salary from it of $100 per week. This agreement was not binding upon the United Corporation until it ratified the same. Tryber v. Girard C. & C. S. Co., 67 Kan. 489, 73 P. 83; 14 C. J. pp. 255-258. The contract of joint adventure did not provide that the United Corporation would elect the plaintiff as president or employ him as its sales manager for any specified time. Neither did it provide that the joint adventure would cause him to be employed for any specific length of time. The allegations of the amended petition do not show that the United Corporation either impliedly or expressly agreed to elect the plaintiff as president or employ him as its sales manager for any specific length of time.

An agreement of employment, indefinite as to time, is terminable at the will of either party, and therefore creates no executory obligation. Warden v. Hinds (C. C. A. 4) 163 F. 201, 25 L. R. A. (N. S.) 529; Clarke v. Atlantic Stevedoring Co. (C. C. N. Y.) 163 F. 423; The Pokanoket (C. C. A. 4) 156 F. 241; The Rescue (D. C. Pa.) 116 F. 380; The Pacific (D. C. Md.) 18 F. 703; Christensen v. Pacific Coast Borax Co., 26 Or. 302, 38 P. 127, 129; Davidson v. Mackall-Paine Veneer Co., 149 Wash. 685, 271 P. 878; J. E. Hanger, Inc., v. Fitzsimmons, 50 App. D.

C. 384, 273 F. 348; Watson v. Gugino, 204 N. Y. 535, 98 N. E. 18, 39 L. R. A. (N. S.) 1090, Ann. Cas. 1913D, 215; Fulkerson v. Western Union Tel. Co., 110 Ark. 144, 161 S. W. 168, Ann. Cas. 1915D, 221; Roddy v. United Mine Workers of America, 41 Okl. 621, 139 P. 126, 127, L. R. A. 1915D, 789; Louisville & N. R. Co. v. Offutt, 99 Ky. 427, 36 S. W. 181, 59 Am. St. Rep. 467; Williston on Contracts, vol. 1, § 39; 39 C. J. p. 71, § 60.

A contract of employment, which provides that the employee shall receive a fixed sum for each day, week, month or year of service but makes no provision as to the time such services shall continue is an indefinite hiring and is terminable at the will of either party. The Pokanoket, supra; Warden v. Hinds, supra; The Rescue, supra; The Pacific, supra; Davidson v. Veneer Co., supra; Louisville & N. R. Co. v. Offutt, supra; Peacock v. Virginia-Carolina C. Co., 221 Ala. 680, 130 So. 411; Howard v. East Tennessee, V. & G. R. Co., 91 Ala. 268, 8 So. 868; Kansas Pac. R. Co. v. Roberson, 3 Colo. 142; Orr v. Ward, 73 Ill. 318; Greer v. Arlington Mills Mfg. Co., 1 Pennewill (Del.) 581, 43 A. 609; McCullough Iron Co. v. Carpenter, 67 Md. 554, 557, 11 A. 176; Evans v. St. Louis, Iron Mt. & So. R. Co., 24 Mo. App. 114; Harrington v. Brockman Comm. Co., 107 Mo. App. 418, 81 S. W. 629; Martin v. New York Life Ins. Co., 148 N. Y. 117, 42 N. E. 416; Edwards v. Seaboard & R. Co., 121 N. C. 490, 28 S. E. 137; Booth v. National India Rubber Co., 19 R. I. 696, 36 A. 714; Resener v. Watts, Ritter & Co., 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629; Prentiss v. Ledyard, 28 Wis. 131; Kosloski v. Kelly, 122 Wis. 665, 100 N. W. 1037; Burke v. Lincoln-Valentine Co., 28 Misc. Rep. 202, 58 N. Y. S. 1077, 1124; Watson v. Gugino, supra.

In the case last cited, plaintiff purchased a one-third interest in a macaroni manufacturing business conducted by the defendant and his brother, agreeing that plaintiff and defendant should form a corporation to operate the business; that 65 shares of the stock in the corporation should be owned by defendant and 33 shares by plaintiff, and 1 share each by two other persons to qualify them as directors; and that the defendant should devote his whole time and attention to the business of the corporation and receive a salary of $20 per week. Plaintiff was experienced in the business and defendant was not. Notwithstanding these facts, it was held that the employment of defendant, as manager of the business, was at the will of the parties and not for a reasonable time; and that defendant could quit his employment at any time without incurring legal liability to the plaintiff.

In some jurisdictions, however, it is held that, where a contract specifies a certain amount of compensation per week, month or year, in the absence of evidence indicating a contrary intention, the parties will be presumed to have intended the employment to continue for one of such periods. Williston on Contracts, vol. 1, p. 62; National Life Ins. Co. v. Ferguson, 194 Ala. 658, 69 So. 823; Magarahan v. Wright, 83 Ga. 773, 10 S. E. 584; Odom v. Bush, 125 Ga. 184, 53 S. E. 1013; Nichols v. Coolahan, 10 Metc. (Mass.) 449; Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 85 N. E. 877; Chamberlain v. Detroit Stove Works, 103 Mich. 124, 61 N. W. 532; Horn v. Western Land Ass'n, 22 Minn. 233; Capron v. Strout, 11 Nev. 304; Beach v. Mullin, 34 N. J. Law, 343; Young v. Lewis, 9 Tex. 73; Cronemillar v. Milling Co., 134 Wis. 248, 114 N. W. 432.

Under either view, plaintiff or the United Corporation could have terminated plaintiff's employment as sales manager at the end of any week without incurring legal liability.

Also, if the contract be construed as obligating the Kansas Corporation and the Kansas Company to cause plaintiff to be employed as sales manager by the United Corporation, it likewise was indefinite as to time and imposed no executory obligation that the employment should be continued for any definite period.

Even if we treat the United Corporation as a mere agency of the joint adventure and plaintiff as an employee of such joint adventure, the contract of employment was indefinite as to time and imposed no executory obligation.

It follows that plaintiff had no binding contract for future employment and could not successfully maintain an action against either the United Corporation or the joint adventure for terminating his employment with or without cause.

It is a well settled principle that damages which are uncertain, conjectural or speculative in their nature will not afford the basis of a recovery. Hollweg v. Schaefer Brokerage Co. (C. C. A. 6) 197 F. 689, 701; Western Union Tel. Co. v. Ivy (C. C. A. 8) 177 F. 63; Karrick v. Rosslyn S. & C. Co., 58 App. D. C. 89, 25 F.(2d) 216, 217; 17 C. J. p. 753, § 86; Id. p. 754, § 88.

Can the plaintiff recover damages against the defendants for breaches of the contract to furnish merchandise to the United Corporation resulting in the United Corporation's not voluntarily continuing to employ plaintiff? In other words, can plaintiff recover damages upon the theory that, while the United Corporation was not obligated to continue to employ him, it would have voluntarily done so but for the wrongful acts of the Kansas Corporation and the Kansas Company? It seems clear to us that damages predicated upon such a theory are too uncertain and speculative to afford a basis for recovery.

We conclude that the amended petition failed to state a cause of action in favor of plaintiff against defendants.

The judgment is therefore affirmed.